IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| CURT SIMPSON, | CV 19–198–M–DLC |
| Plaintiff, | |
| vs. | |
| | ORDER |
| THE WORSTER GROUP LLC, TACO DEL SOL, INC., and FAST TRIP, INC., | |
| Defendants. | |

Three motions are pending before the Court: (1) Plaintiff Curt Simpson's

("Simpson") Motion to Compel Inspection (Doc. 10); (2) Defendant the Worster

Group, LLC, Taco Del Sol, Inc., and Fast Trip, Inc.'s (collectively, "Defendants")

Motion for Protective Order (Doc. 17); and (3) Defendants' Rule 12(b)(1) Motion

to Dismiss (Doc. 21). For the reasons explained, the motion to dismiss is denied,

the motion to compel is granted, and the motion for a protective order is granted in

part and denied in part.

## BACKGROUND

Plaintiff Curt Simpson requires a wheelchair for mobility after the

amputation of his right leg. (Doc. 1 at 2.) In early November of 2019, Simpson

visited Defendants' facilities. (*Id.* at 2–3.) On December 11, 2019, Simpson filed

this suit alleging that he was "denied full and equal access to, and full and equal

enjoyment of" the facilities due to 33 violations of the Americans with Disabilities Act ("ADA").

**DISCUSSION**

### I.      Motion to Dismiss

Defendants move to dismiss this case under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction asserting that Simpson's claims are now moot.  (Doc. 22 at 8.)  After receiving Simpson's Complaint, Defendants hired their own ADA expert to inspect the property.  (Doc. 16 at 3.)  Their expert determined that 31 of Simpson's 33 claims lacked merit.  (*Id.* at 5–6.)  As for the remaining two claims, Defendants assert that they have remediated the two previously non-compliant features so that both facilities fully comply with the ADA, rendering the case moot.  (Doc. 22 at 2.)  In support, Defendants attach two reports prepared by their expert that detail her findings.  (Docs. 19-1; 19-2.)

Simpson argues that the reports generated by Defendants' expert do not establish a complete and clear record that would indicate that there is no live controversy.  (Doc. 24 at 4.)  The Court agrees.

This case presents a live controversy for three reasons: (1) it is not clear that the newly-remediated features now meet ADA standards; (2) Defendants' expert reports contain broad disclaimers that preclude the Court from relying on those findings to dismiss the case at this stage; and (3) Simpson has not been given an

opportunity to understand the full scope of his injury because Defendants have

denied him the opportunity to inspect the premises.  The Court will explain each

reason more fully below.

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy'

for purposes of Article III—'when the issues presented are no longer "live" or the

parties lack a legally cognizable interest in the outcome.'"  *Rosebrock v. Mathis*,

745 F.3d 963, 971 (9th Cir. 2014) (quoting *Already, LLC v. Nike, Inc.*, 133 S. Ct.

721, 726 (2013)).  However, "[t]he voluntary cessation of challenged conduct does

not ordinarily render a case moot because a dismissal for mootness would permit a

resumption of the challenged conduct as soon as the case is dismissed."  *Id.*

(quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 132 S. Ct. 2277, 2287

(2012)).  Voluntary cessation can only render a case moot when the party asserting

mootness meets a heavy burden of showing that "subsequent events [have] made it

absolutely clear that the allegedly wrongful behavior could not reasonably be

expected to recur."  *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*

*(TOC), Inc.*, 528 U.S. 167, 189 (2000)).

Defendants admit to two violations of the ADA but assert that both features

have subsequently been modified bringing them into ADA compliance.  (Doc. 22

at 2.)  In his Complaint, Simpson alleges that Fast Trip's transaction counter is too

high.  (Doc. 1 at 11.)  To prove they have rectified the problem, Defendants submit

a photograph of an alternate countertop that appears to pull out from below the

original countertop.  (Doc. 19-1 at 9.)   This photograph does not establish that

Defendants have met their high burden to prove that the "allegedly wrongful

behavior could not reasonable be expected to occur."  *Id.*  For starters, the sliding

countertop appears to be a temporary fix that could be removed at any future time.[1]

Second, none of the items necessary for a transaction—such as the credit card

terminal—are located on that countertop.  In short, it is not clear that Fast Trip is

actually prepared to conduct a transaction from the allegedly ADA compliant

transaction counter.  This claim is better resolved on summary judgment.

Simpson also complains that the male restroom's paper towel dispenser is

out of reach.  (Doc. 1 at 15.)  Although Defendants admit this violation and claim

to have addressed the issue, they present no photographs that clearly demonstrate

their fix.[2]  (*See* Doc. 19-2 at 10.)  Given the lack of proof, Defendants have not

---

[1] In making this observation, the Court does not presume any bad intent on the part of
Defendants.  When Congress passed the ADA, it did so with recognition that discrimination
against disabled individuals does not typically result from animus but rather from "benign
neglect."  *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 944 (9th Cir. 2011) (en banc).  A
temporary solution is likely effective in the short term when employees and managers are aware
of this lawsuit and any remedial acts.  The Court's comment that a temporary solution does not
necessarily moot a claim is forward-looking.  Without more information about the permanence
of this fix, the Court cannot be satisfied that months or years down the line someone will become
dissatisfied with a non-integrative solution and simply remove that which they perceive to be
extraneous.

[2] It is unclear whether the photograph submitted represents the paper towel dispenser before or
after the fix as the numbers on the measuring tape are not visible.

meet their high burden to show mootness.  These claims are better resolved once

the parties have had the benefit of discovery.

Simpson's remaining claims are not moot as the reports submitted by

Defendants' expert contains the following disclaimer: "This report is not intended

to be an exhaustive or perfect analysis, nor can it be thoroughly conclusive."  (Doc.

19-1.)  Without a thorough, exhaustive report, it is not proper for the Court to deny

Simpson's Complaint from proceeding through the adversarial process.  Although

these reports provide evidence from which Defendants may argue they are entitled

to summary judgment, the report itself recognizes that it is not "conclusive."  The

high burden to demonstrate mootness has not been met.

Finally, to have standing to pursue a challenge under the ADA, a plaintiff

must have encountered a barrier that denied his or her "full and equal enjoyment"

of the facility.  *Chapman*, 631 F.3d at 947.  Once a plaintiff is deterred from

enjoying a public facility because of a barrier, that plaintiff does not merely have

standing to pursue a challenge related to that barrier; the plaintiff's standing

encompasses "*all* barriers in that public accommodation that are related to his or

her specific disability."  *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1047 (9th Cir.

2008) (emphasis added).

Defendants' expert reports do not moot Simpson's case because the reports

were expressly limited to the "areas address in . . . Simpson's complaint" and

Simpson's standing extends to any barriers in the facility specific to his disability.

Without the opportunity for discovery, how will Simpson know whether he has any

further claims?  Because the controversy potentially exceeds the scope of his

Complaint—and Defendants have not challenged the sufficiency of the

Complaint—Simpson's case is not subject to dismissal at this stage.[3]  Defendants

motion to dismiss is denied.

## II.      Motion to Compel Inspection

Simpson moves the Court to compel inspection of Defendants' facilities

pursuant to Federal Rule of Civil Procedure 34(a)(2).  Defendant objects by

arguing that Simpson's failure to serve a formal discovery request is fatal to his

motion.[4]  Citing a handful of district court decisions, Defendants argue that it is

"axiomatic" that a party cannot move to compel discovery without first making a

formal discovery request.  (Doc. 18 at 8.)  At the time of this motion's filing,

Simpson had apparently never submitted a formal discovery request and had only

---

[3] The parties do not even agree about which laws governs this dispute.  In his Complaint,
Simpson alleges violations of the 2010 Americans with Disability Act Standards for Accessible
Design ("ADAS") and the 2015 Architectural Barriers Act Accessibility Standards ("ABAAS").
(Doc. 1.)  Defendants assert that the 2015 ABAAS is not at issue because it only applies to
federal buildings.  (Doc. 22 at 3.)  Defendants also argue that the Fast Trip portion of the
building has not undergone new construction or alteration making the 2010 ADAS inoperable to
that facility.  (*Id.*)  This lack of agreement on the governing law indicates that this case is still in
its early stages and requires discovery to better flesh out these issues.  It is not a reason for its
dismissal.  *See Skinner v. Switzer*, 562 U.S. 521, 530 (2011) ("[A] complaint need not pin
plaintiff's claim for relief to a precise legal theory[.]").
[4] Defendants alternatively assert that the Court must deny his request because Simpson's case is
moot.  The Court has already denied that claim.

emailed opposing counsel to request an inspection.  (Doc 20-1.)  Since filing,

however, Simpson has rectified any alleged procedural error by serving a formal

request.  (Doc. 20-2.)  As Defendants do not raise any further challenges to the

sufficiency of the request, the Court will grant the motion to compel the inspection

of the premises pursuant to Rule 34(a)(2).

### III.    Motion for Protective Order

Simpson requested that Defendants produce "any and all documents which

reflect the defendant's and/or its predecessor(s) in interest's gross revenue"

including "tax returns, income statements, and applications and/or information

provided to lenders."  (Doc. 18-1 at 9–10.)  Defendants argue that such a sweeping

request is impermissible and move for a protective order claiming that this

information is protected by Montana's constitutional right of privacy, and such

information is "confidential, irrelevant, and non-probative."  (Doc. 18 at 14.)

Montana's right of privacy cannot protect the documents Simpson seeks.

Montana's right of privacy does not extend to corporations or nonhuman entities.

*Great Falls Tribune v. Montana Pub. Serv. Comm'n*, 82 P.3d 876, 883 (Mont.

2003).  The only question is whether this information is relevant to any claim or

defense.

Plaintiffs assert that financial information is relevant to Defendants'

affirmative defense that it does not have the financial ability to readily achieve

ADA compliance.  (Docs. 20 at 15; 5 at 2.)  The Court agrees.  Nevertheless,

Federal Rule of Civil Procedure 26(b)(1) conveys a proportionality requirement.

Given that federal law generally protects financial information from unnecessary

disclosure, *Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229

(9th Cir. 1975), it is not necessary or proportional for Simpson to acquire the

detailed financial information he seeks simply so he can rebut any claim that

Defendants lack the ability to update the premises.  The Court will grant

Defendants' request for an order of protection of corporate financial information

with one exception.  Defendants must produce a copy of their most recent tax

return but may redact all sensitive information except for their gross revenue.

IT IS ORDERED that Simpson's Motion to Compel Inspection (Doc. 10)

is GRANTED.  Simpson may inspect those areas specifically noted in his

discovery request for no more than three hours on a mutually agreeable date not

to adversely impact Defendants' businesses.

IT IS FURTHER ORDERED that Defendants' Motion for Protective Order

(Doc. 17) is GRANTED in part and DENIED in part consistent with this Order.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss for Lack

of Jurisdiction (Doc. 21) is DENIED.

DATED this 16th day of July, 2020.

Dana L. Christensen, District Judge
United States District Court